

NORTHERN DISTRICT OF TEXAS

**ENTERED**

**TAWANA C. MARSHALL, CLERK**
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*[Signature: Harlin DeWayne Hale]*

Signed November 21, 2006                        **United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WALSH JORDAN, JR., | § | Case No. 05-86647-HDH-7 |
| | § | |
| Debtor. | § | |
| WILLIAM T. NEARY, | § | |
| UNITED STATES TRUSTEE, | § | |
| | § | |
| Plaintiff | § | |
| vs. | § | Adversary No. 06-3337 |
| | § | |
| WALSH JORDAN, JR., | § | |
| | § | |
| Defendant | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In the present complaint, the United States Trustee (the "U.S. Trustee") objects to the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(3), -(4)(A) and -(4)(D) of the Bankruptcy Code. The Court held a trial on the U.S. Trustee's complaint on October 31, 2006. Upon conclusion of the presentation of testimony and evidence, the Court took the matter under advisement and gave the parties additional time to submit post-hearing proposed findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This Matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

## FINDINGS OF FACT

1. Walsh Jordan, Jr. ("Jordan" or "Debtor") filed the above referenced bankruptcy case. At the time of the filing, Debtor had an interest in various properties listed on his schedules. He also is building a new business coaching or training local youths to play basketball, after having played professionally in Europe for several years. His income from this venture is modest, at best.

2. Prior to the instant case, Jordan decided to make Dallas his home. He hoped to eventually purchase his own home. Although he had managed to save approximately $40,000, he believed he would need a minimum of $100,000 to purchase a home. He began searching for employment or business opportunities. Jordan filed several assumed name certificates for business ventures that were never developed. *See* Debtor's Amended Schedule response to Question 18 of the Debtor's Amended Statement of Financial Affairs. (*See* UST Exs. 1-C and D-3). Jordan testified that he has not operated any business under these assumed names with the exception of Pavilion Investment Group and Next Level Basketball.

### A. THE RENTAL PROPERTY

3. In 2004, Jordan met Reginald Mohammad ("Mohammad"); Jordan understood Mohammad had successfully invested in the local real estate market. Mohammad suggested that Jordan invest in residential rental property. Jordan thought the rental income would allow Jordan to quickly build equity in the property, which he could then sell to the tenant or a third party. According to Jordan, Mohammad explained that some people who had substantial income or other financial resources had a poor credit rating and could not obtain favorable financing terms; however, Jordan could obtain financing and subsequently lease or sell the property to the tenant for a profit. Mohammed offered to help locate the tenants and residential property; Jordan also expected to receive $75,000 as compensation for management and maintenance of the Rental Property.

4. Jordan purchased several residential homes (the "Rental Property[1]"). He subsequently leased the Rental Property to various tenants (the "Tenants") and applied the rental income to the mortgage payments on each property. Many of the Tenants also entered into agreements to purchase the Rental Property from Jordan.[2] In 2004 and 2005, Jordan received a total of $75,000 as compensation for management and maintenance of the Rental Property

5. The income from the property was not sufficient to cover his monthly mortgage obligations. *See* Schedule I (UST Ex. 1-A; Ex. D-2). Jordan's mortgage payments on several properties exceeded the income; several Tenants continuously failed

---

[1] With the exception of the ½ interest in the house located at 1884 South Electric St., Detroit, MI 48217, Jordan owns with his father, all the real property identified on Debtor's Schedule A is "Rental Property").

[2] The Tenants executed either a Real Estate Lease or Contract for Deed with Walsh Jordan, Jr., d/b/a Pavilion Investment Group ("Pavilion").

to timely pay their rent. The obligations and debt related to the Rental Property exceeded Jordan's ability and resources.

6. As the borrower, Jordan was obligated to make the mortgage payments on the Rental Property. He made such payments from his own funds as necessary; depleting his personal life savings, approximately $40,000, plus $75,000, his Rental Property management fee; and accumulated more than $2 million in debt.

7. Although Jordan received a Bachelor's Degree, he had no significant business or investment experience; furthermore, he had no education, training, or experience in management, investment, or sales of real estate. At trial, Jordan appeared to be unsophisticated in business affairs. However, he appeared to be an honest and sincere witness. His apparent reliance upon the advice of Mohammad, an acquaintance, appears reasonable in this case.

### B. DEBTOR'S CHAPTER 7 BANKRUPTCY

8. In October 2005, Jordan consulted Wally Wadsworth ("Wadsworth"), an attorney, regarding his overwhelming financial obligations. Wadsworth advised Jordan of the relief available under Title 11 of the United States Code (the "Bankruptcy Code"). Jordan filed his voluntary Chapter 7 Petition, Schedules and Statement of Financial Affairs, on October 16, 2005 (the "Petition Date"), immediately prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "2005 Act").

9. At trial, Jordan and Mr. Wadsworth each explained their efforts to accurately disclose all assets and liabilities in Debtor's Schedules and Statement of Financial Affairs. Although Jordan provided the information contained therein,

Wadsworth testified that he completed the Schedules and Statement of Financial Affairs. Jordan relied on Wadsworth's advice in completing the Schedules and Statement of Financial Affairs. He filed Debtor's Amended Schedules and Statement of Financial Affairs on February 20, 2006. Wadsworth consulted Jordan as to the answers to each question. Apparently, Wadsworth applied his own interpretation to a couple of the questions. Wadsworth has limited experience in answering the required questions; Jordan has none.

10. The Debtor disclosed, in his Schedules and Statement of Financial Affairs, information regarding all the Rental Property. (UST Exs. 1-A and D-2). He disclosed to the Trustee, the public, and the Court his interests in the various properties.

11. On February 22, 2006, Robert Newhouse, the Chapter 7 Trustee, conducted the first meeting of creditors pursuant to Section 341 of the Bankruptcy Code. Jordan attended the meeting with Wadsworth. After concluding the meeting, the Trustee reported that there were no assets available for distribution to creditors and requested that he be discharged from the case. With the exception of the U.S. Trustee's Discharge Objection, there has been no further activity in the bankruptcy case.

B. **THE DISCHARGE OBJECTION**

12. The United States Trustee designated Albert Loftus ("Loftus") as the representative of the Office of the United States Trustee (the "U.S. Trustee's Office") in the trial of this adversary proceeding. Mr. Loftus has testified in this Court before. He is a knowledgeable and credible witness. Mr. Loftus testified that the U.S. Trustee's Office began its investigation of the Debtor in November or December 2005.

13. On December 1, 2005, the U.S. Trustee requested additional information

from the Debtor; "[o]f special concern are documents used to obtain loans from any government guaranteed lending institution, i.e. H.U.D., banks, or federally insured lenders." The primary focus of the U.S. Trustee's investigation appeared to be the Debtor's acquisition of the Rental Property and accumulation of approximately $3 million in debt identified in Schedule F.

14. On January 30, 2006, Wadsworth produced documents and information responsive to the requests of the U. S. Trustee. On or about July 3, 2006, the Debtor produced additional information and documents in response to requests for production by the U.S. Trustee, including a bankers' box full of loan documents. The Debtor appears to have cooperated with the U.S. Trustee and produced all records in his possession or subject to his control in response to the requests of the U.S. Trustee herein.

15. On February 22, 2006, at the first meeting of creditors, Loftus questioned the Debtor regarding his assets and liabilities; his examination focused on the information provided by the Debtor related to the acquisition of the Rental Property.

16. On April 24, 2006, the U.S. Trustee filed his Complaint Objecting to Debtor's Discharge ("Discharge Objection") initiating this adversary proceeding. The U.S. Trustee objects to the Debtor's discharge pursuant to Section 727(a) (3), (4) (A) and (D) of the Bankruptcy Code. The U.S. Trustee alleges that the Debtor has concealed or failed to disclose information regarding his real estate transactions, including income from Rental Property and the Debtor's interests in the various d/b/a's.

    1)    <u>Disclosure of Income from Rental Property</u>.

17. The U.S. Trustee has claimed that the Debtor has concealed or failed to disclose his income in his Schedules and Statement of Financial Affairs.

18. In response to Question 1, Statement of Financial Affairs, the Debtor is required to disclose gross income for the two years prior to the Petition Date. The Debtor originally disclosed only $3,057.00 for 2004, and failed to disclose income for 2003 and 2005. On February 20, 2006, the Debtor amended his Statement of Financial Affairs disclosing income of $615 for 2003 and ($12,869.00), however failed to disclose income for 2005. Although the request is for disclosure of gross income, Wadsworth testified that he uses adjusted gross income for his clients. Wadsworth's interpretation of the question for Jordan appears to be misplaced. Jordan, of course, has never completed the forms before, and relied upon his counsel Wadsworth.

19. Although income for 2005 is not disclosed in response to Question 1, Schedule I Business Income and Expenses discloses income and expenses for the Rental Property, and Schedule I discloses $500 per month for basketball coaching.

20. The Trustee alleges that the Debtor deposited $157,000 in his bank account in 2005, approximately $30,000 more than is reported as gross revenue from business on Schedule I. The difference may be explained as income other than rental income, i.e., basketball coaching, or installments of the $75,000 management fees. Wadsworth testified he used adjusted gross income for reporting in response to Question 1 of the Statement of Financial Affairs. The Debtor reported this as part of adjusted gross income for 2004 and 2005 in response to Question 1 and Schedule I Business Income and Expense. Again, Wadsworth's interpretation for his client is incorrect.

21. The U.S. Trustee alleges that the Debtor has failed to disclosed or concealed income. However, the Debtor has explained the apparent inconsistent disclosures related to income reported herein. Further, the Debtor's answers appear to be

based, in large part, on his lawyer's erroneous construction of the question.

2) <u>Disclosure of Leases or Executory Contracts</u>.

22. The U.S. Trustee alleges that the Debtor has failed to disclose, or that he has concealed the Real Estate Leases or Contracts for Deed in Schedule G. Although these contracts were not properly identified in Schedule G, the Tenant of each Rental Property has been identified on Schedule F, with a claim designation "Lease to Own." Furthermore, the disclosure was made pursuant to the advice of counsel. Wadsworth elected to list Tenants on Schedule F; he testified that he did not believe it was necessary to list these claims on two separate schedules. Wadsworth's decision here was misplaced. However, Jordan had no experience with the forms.

23. The U.S. Trustee argues that the characterization of these agreements as "Lease to Own" is not sufficient to put a Trustee on reasonable notice of the nature of the debts and the rights under the agreement. Although the U.S. Trustee is correct in his statement that Leases and "contracts for deed" create separate rights and obligations under the contract, the occupants of the houses under either contract were paying for the right to possession of the real property for some period of time. Furthermore, Schedule F clearly identifies each Rental Property by address designated as Lease to Own by Tenant. This information disclosed the various properties and the Debtor's belief as to their value, and put the Chapter 7 Trustee and the creditor body on notice.

3) <u>Disclosure of Assumed Names</u>

24. Shortly after the Petition Date, Loftus, in his usual thorough fashion, conducted an online search of public records and discovered several assumed names associated with the Debtor, these names had not previously been disclosed. Although the

Debtor Amended his Schedules and Statement of Financial Affairs disclosing the assumed names, the U.S. Trustee alleges that the Debtor's failure to identify the entities identified on Debtor's Amended Schedule B constitutes concealment. *See* Amended Schedule B and Question 18, Statement of Financial Affairs. (UST Exs. 1-B and D-3).

25. Jordan had filed several assumed name certificates for business ventures that were never developed. *See* Debtor's Amended Schedule B and response to Question 18 of the Debtor's Amended Statement of Financial Affairs. (*See* UST Exs. 1-C and D-3). Jordan testified that he has not operated any business under these assumed names with the exception of Pavilion Investment Group and Next Level Basketball. Furthermore, no separate legal entity has been established under any of these names. Any assets or income associated with these assumed names would also be associated with Walsh Jordan; i.e., Walsh Jordan, Jr. d/b/a Pavilion Investment Group. (*See* UST Exs. 11-16, and 20). Furthermore, the U.S. Trustee discovered the assumed names as a result of an online search of public records.

26. Wadsworth testified that he asked the Debtor if the Debtor had any other interests of value. The assumed names appear to have no value. These facts and circumstances support that the omission was a mistake, but not a fraud. Jordan testified that he simply did not think about these ventures in response to Wadsworth's question, because they never had value.

    4)  <u>Debtor's Business Records</u>

27. The United States Trustee next argues that the Debtor failed to maintain adequate records from which his financial condition and business records can be maintained.

28.     The Debtor's Schedules and Statement of Financial Affairs disclose information available related to Debtor's assets and liabilities. Specifically, the Rental Property, the Mortgage Lenders, the Tenants, the Leases and/or Contracts are all identified in the Schedules and Statement of Financial Affairs.

29.     The Court has broad discretion to determine the credibility of a witness's testimony. *Robertson v. Dennis (In re Dennis),* 330 F.3d 696, 701 (5th Cir. 2003). Throughout both direct and cross-examination, the Court carefully observed Mr. Jordan. His responses to questions from both the Court and counsel were clear, calm, and concise; his testimony appeared responsive and reasonable. The Court finds the testimony provided by Jordan was credible and believable.

30.     Furthermore, the Debtor has been fully cooperative in responding to the U.S. Trustee's requests for information and documents. The Debtor has provided the U.S. Trustee with copies of all of his records related to the Rental Property including bank records, tax data or transcripts, real estate leases, and contracts for deeds. From this information the U.S. Trustee and the creditor body can identify each Rental Property, the Mortgage Lender, the Tenant, the applicable Lease or Contract for Deed, the payment due hereunder. These actions by the Debtor, though after the fact, suggest a conclusion that the Debtor has not attempted to conceal anything in this case.

## CONCLUSIONS OF LAW

1. The Bankruptcy Code provides an honest debtor with a fresh start, free from the burden of past debts. *Brown v. False,* 442 U.S. 127 (1979). Section 727(a) must be construed liberally in favor of the debtor and strictly against the creditor objecting to the granting of the debtor's discharge. *F.D.I.C. v. Sullivan (In re Sullivan)*, 204 B.R. 919, 938 (Bankr. N.D. Tex. 1997). At the same time, however, discharge is not a right but a privilege, which should be granted to those debtors who put forth a good faith effort in producing an entire picture of their financial affairs. *Union Planters Bank, N.A. v. Connors*, 283 F.3d 896, 900-901 (7th Cir. 2002).

2. The burden of proof falls on the creditor to prove that the case falls within one of the 727(a) exceptions by a preponderance of the evidence. *See Grogan v. Garner*, 489 U.S. 279, 286, 111 S.Ct. 654, 660 (1991); *see also Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174 (5th Cir. 1992).

### A. Section 727(a)(4)(A) False Oath

3. The U.S. Trustee must prove that (i) the Debtor made a statement under oath; (ii) the statement was false; (iii) the Debtor knew the statement was false; (iv) the Debtor made the statement with fraudulent intent; and (v) the statement materially related to the bankruptcy case. *Cadle Company v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005); *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992). False oaths may be in the form of either false statements or omissions on the schedules and statements of financial affairs or false statements by the debtor during the course of the bankruptcy proceedings. *Id*. The U.S. Trustee argues that the numerous omissions and errors in the Debtors' Schedules and Statement of Financial Affairs constitute a

knowing and fraudulent false oath pursuant to Section 727(a)(4)(A). The alleged errors primarily relate to the Rental Property.

4. The subject matter of a false oath is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property. *In re Beaubouef,* 966 F.2d at 178. The Trustee objects to the concealment or failure to disclose: i) income from Rental Property; ii) Executory Contracts and iii) assumed names.

5. Under the facts of this case, the Court finds that the alleged errors or omissions are not material because they have no effect upon the bankruptcy estate. Further, the errors appear, in large part, to be due to inaccurate interpretations of the questions by counsel. Finally, no fraudulent intent was proved at trial. In fact, the disclosure of the property and the parties to the contracts in other places in the Debtor's bankruptcy filings show that the Debtor was not concealing anything.

6. The Plaintiff can demonstrate the intent elements of Section 727 by circumstantial evidence. *Pavy v. Chastant,* 873 F.2d 89 (5th Cir. 1989). Fraudulent intent may also be shown by a debtor's reckless indifference to the truth. *See Sholdra v. Chilmark Financial LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001). There is no evidence that Jordan knew the information was false, that he intended to make a fraudulent statement or that the statements made were material to this case. *See In re Tomasek*, 175 Fed. Appx. 662 (5th Cir. 2006) (unpublished).

7. Furthermore from his testimony, the Court finds that Jordan relied on advice of his counsel in completing the Schedules and Statement of Financial Affairs in good faith, thus the Court finds no inference of fraud. *See In re Morris*, 58 BR 422

(Bankr. N.D. Tex. 1986); *See also In re Dreyer,* 127 B.R. 587, 595 (Bankr. N.D. Tex.1991) (debtor's reliance on counsel's advice can constitute defense if reliance is reasonable and in good faith).

### B. Section 727(a)(4)(D) Withholding Information

8. Section 727(a)(4)(D) precludes discharge if the "debtor knowingly and fraudulently . . . withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(D).

9. Based on the record presented to the Court, the U.S. Trustee has not shown by a preponderance of the evidence, that the Debtor knowingly and fraudulently withheld information relating to the Debtor's property or financial affairs.

10. Additionally, Debtor has adequately and credibly explained his inability to furnish all of the information requested by the U.S. Trustee in this case.

### C. Section 727(a)(3) Concealment

11. The U.S. Trustee alleges the Debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve. . . records . . . from which the Debtor's financial condition or business transactions might be ascertained." *See* 11 U.S.C. § 727(a)(3).

12. A debtor's financial records need not contain full detail, but there should be some written evidence of the debtors financial condition. *Robertson v. Dennis (In re Dennis)*, 303 F.3d 696, 703 (5th Cir. 2003). Under §727(a)(3), the initial burden is on the party objecting to the discharge to show that the debtor has failed to keep and maintain records sufficient for the creditors to ascertain the debtor's financial condition. The burden then shifts to the debtor to show that his failure was justified based on the totality

of circumstances including what a reasonable person would do in similar circumstances. *Cadle Co. v. Preston-Guenther (In re Guenther),* 333 B.R. 759, 765 (Bankr. N.D. Tex.2005). The debtor's duty under section 727(a)(3) is to take reasonable precautions to preserve his records, and although the debtor's financial records need not be perfect, they must provide some evidence of the debtor's financial condition. *Id*. The law does not require an impeccable system of bookkeeping. *Id*. (citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3rd Cir. 1992)).

13. The Debtor cooperated in responding to the U.S. Trustee's requests for information and documents. The Debtor has provided the U.S. Trustee with copies of all of his records in his possession, or under his control that related to the Rental Property including bank records, tax data or transcripts, real estate leases, and contracts for deeds. From this information the U.S. Trustee can identify each Rental Property, the Mortgage Lender, the Tenant, the applicable Lease or Contract for Deed, the payment due thereunder. *See In re Dreyer*, 127 B.R. 587, 594 (Bankr. N.D. Tex. 1991). The U.S. Trustee has not shown that the Debtor failed to keep and maintain records sufficient for the creditors to ascertain his financial condition.

Based on the foregoing, the United States Trusteee's Complaint will be denied. Counsel for Jordan shall submit a separate judgment within ten days of the entry of these findings and conclusions.

###END OF FINDINGS OF FACTS AND CONCLUSIONS OF LAW###